Robert K. Mann
Pro Se
3260 Delray Drive
Apt 508
Delray Beach, FL 33483

FILED BY ______ D.C.
2006 OCT 19 PM 12: 27
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

06-80983

| | |
|---|---|
| STEVEN GOLDSTEIN<br>JANET GOLDSTEIN<br>Defendants<br><br>v<br><br>ROBERT K. MANN<br>Plaintiff | APPLICATION TO VACATE ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10<br>MEMORANDUM OF POINTS AND AUTHORITIES |

CIV-MIDDLEBROOKS

MAGISTRATE JUDGE JOHNSON

Plaintiff Robert K. Mann, hereby apply for the entry of an order pursuant to 9 U.S.C. § 10 (the Federal Arbitration Act) vacating the award that was entered against plaintiff in the arbitration captioned Goldstein et. al. v. Pacvest Associates, Inc. et. al., National Association of Securities Dealers No. 05-04437.

As detailed in the attached Memorandum of points and authorities, plaintiffs' application is based on the fact that the arbitrators exceeded their powers or so imperfectly executed them that their action rendered the award invalid pursuant to 9 U.S.C. § 10 and on the fact that their award was given in manifest disregard of the law.

The arbitration in this action was held in Boca Raton, FL and this court has proper venue for bringing this action. See 9 U.S.C. § 10 (motion to vacate award may be brought in district where the arbitration award was made).

Plaintiffs' Application is based on the attached Memorandum of Points and Authorities; the attached Declaration of Counsel, the files and records of the case and any such further supplemental material information as the court will consider prior to or at the hearing of this action.

# MEMORANDUM OF POINTS AND AUTHORITIES

## The Legal Standard

Title 9, United States Code § 10 provides that a federal district court may make an order vacating an arbitration award upon the application of any party to the arbitration. Among other grounds, Section 10 provides that an award may be vacated:

> "(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In addition, arbitration award may be vacated if it constitutes a "manifest disregard of law." Todd Shipyards Corp. v. Cunnard Line Ltd., 943 F.2d 1056 (1991).

## The Arbitration at Issue

The arbitration at issue in this action was initiated when a Statement of Claim was filed with the National Association of Securities Dealers, Inc. ("NASD") in 2005. A copy of the Statement of Claim is attached to the Declaration of David Constantino as Exhibit A.

The Statement of Claim named as parties Pacvest Associates, Inc. (the broker/dealer firm), Robert K. Mann (President of the broker/dealer firm), and Barry Kornfeld (the broker). The Statement of Claim sought damages stemming from a warranty product sold to Claimants warranting their investment principal for a five year period. The insurance policy itself was purchased by the advisory firm (called Advisor's Capital Investments, Inc.) which worked in association with Pacvest. The clients of the advisory firm become third party beneficiaries under the policy. The insurance company that sold the policy to Advisor's Capital Investment, Inc. was called Cumberland Casualty and Surety Company ("CCSC").

Subsequently, CCSC went into receivership shortly before the five year period for the Claimants warranty was due. The Claimants filed a claim with the NASD claiming breach of fiduciary duty, suitability, breach of contract, misrepresentation, and failure to supervise. The actual individual who was the broker along with Mr. Kornfeld was Lloyd Breur. Lloyd Breur was the individual who meet with and sold the product to the Claimants.

## The Evidence at the Hearing

The transcript of the hearing is still being prepared as of the date of this motion and plaintiffs reserve right to supplemental this application once it is completed. Plaintiff believes that a review of that transcript would reveal that the evidence at the hearing established the following:

1. The Claimants never met or spoke with Mr. Mann when they purchased the warranty.
2. The Claimants purchased the warranty from Lloyd Breur.
3. The Claimants met with and spoke to Lloyd Breur.
4. Lloyd Breur and Barry Kornfeld were the brokers of record for the Claimants.
5. Ronald Derby was the compliance officer for Pacvest's main office and Lloyd Breur was the compliance officer for Pacvest's local office.
6. Both Lloyd Breur and Barry Kornfeld were adjudicated bankrupt under Ch. 7 and neither attended the hearing.
7. The Claimants alleged that Mr. Breur told them that CCSC was backed by 100% reinsurance and the state of Florida maintained a guarantee fund which backed CCSC.
8. None of this information was produced in writing to the Claimants.
9. It was public information that the reinsurance was 50%. The SEC web site and CCSC stated the reinsurance was 50%.
10. The Claimants received 11% by the receiver of CCSC for their losses which was derived from the reinsurance proceeds. The only assets obtained by the receiver were the reinsurance proceeds.
11. The Claimants sited evidence over Respondents objection of bad acts committed by Mr. Breur proved to be unrelated to the Claimants accounts.

## The Award

Despite the evidence at the hearing, the panel issued an award against plaintiffs Pacvest and Robert K. Mann jointly and severally for $73,000.00. The panel failed to specify any basis for the award.

<u>The Arbitration Panel Exceeded Its Authority and Manifestly Disregarded the Law</u>

Pursuant to Florida law it was improper to find Mr. Mann liable for the above stated claims. Mr. Mann was not the broker on the Goldstein's account. As seen in the exhibits both Barry Kornfeld and Lloyd Breur were the brokers of record for Mr. Goldstein. Moreover, they were both agents Pacvest, Inc. Mr. Mann was the President but there exists no legal theory which would make him accountable for another broker's actions. Mr. Mann owns less than 50% of ACI which owns Pacvest, Inc.

The actions in question were that supposedly Lloyd Breur told Mr. and Mrs. Goldstein that Cumberland's insurance was 100% backed by a reinsurance agreement. However, the Goldstein's did not provide any documentation to this effect such as e-mails or the like. The crux of this case was determined by hearsay evidence. The opposing counsel brought in evidence about a bad act of Mr. Breur that was unrelated to the Goldstein. Under Florida law only through cross-examination of Mr. Breur could such evidence be allowed. Mr. Breur did not attend the arbitration.

Clearly, there existed no legal reason for Mr. Mann to have been found liable. Hearsay evidence coincided with impermissible evidence as to Mr. Breur's bad acts unrelated to the Goldstein's is not justification for an NASD Arbitration Award under any legal theory.

Moreover, both Mr. and Mrs. Goldstein were sophisticated investors. Mrs. Goldstein has an accounting degree and Mr. Goldstein was the owner and operator of a successful pharmaceutical company.

All the information regarding Cumberland and its reinsurance agreement was obtainable on-line or from the company directly. One could easily go to the web site and see that the reinsurance was for 50% and not 100% and there was no mention of the State of Florida guaranteeing anything as to this company. The SEC web site maintains a list of companies and their disclosures. All this information about the insurance was listed on SEC web site and hence public information.

Finally, there also existed issues that actually indicated a lack of credibility of the opposing side. Mr. Goldstein under direct examination by his attorney stated he was a sophisticated investor then under cross examination denied he was a sophisticated investor. Counsel for the Goldstein's also made improper statements and comments in his closing statement. He stated that Mr. Constantino could not be bothered to show up for one of the telephonic hearings. In fact, Mr. Constantino called in that day after the hearing to inform the NASD that he did not attend due to a family emergency and to inform the panel. Mr. Constantino also called opposing counsel and explained the reason for the nonattendance the same day as the hearing.

Counsel also falsely stated that the Respondents were not cooperative with discovery and used this as evidence of pretext in a manner that was clearly improper. In

most arbitration it is actually difficult to find a more cooperative opposing party as the Respondent. Any and all documents were supplied to Claimant. However, Opposing counsel made inflammatory statements falsely vilifying Respondents.

In actuality, Claimant's counsel had stated they had not received documents when in fact they did. In short, credibility was an issue on the Claimant's side not the Respondent's side.

As to the law, in Florida an individual cannot simply ignore or rely on information if they could have easily found it themselves. If supposedly Mr. Breur made statements that were false as to the percent of reinsurance available they could have easily looked up this information as it was public information (i.e. the SEC web site lists Cumberland Tech the owner of Cumberland Casualty and on their 10K it states the reinsurance with Dorinco RE is 50%). Also, the rating of Cumberland as B+ under A.M. Best was also easily attainable via the internet and written publications or from Cumberland themselves.

In light of the sophisticated nature of the Claimants, their argument that they relied on Mr. Breur's statements is not only implausible but not legally permissible to constitute misrepresentation. In order to establish misrepresentation the following elements must be found: 1) defendant made false statements 2) defendant knew statements were false 3) statement was made for the purpose of inducing plaintiff to rely on it and 4) plaintiff's reliance was reasonable. (Mergens v. Dreyfoos, 166 F.3d 1114 (1999).)

Further, "A Party's access to information and failure to inquire precludes, as a matter of law, claims of reliance on misrepresentation, for purposes of negligent misrepresentation claim." Hale Container Line, Inc. v. Houston Sea Packing Co, Inc., 137 F.3d 1455 (1998).

Both Claimants stated at the hearing that they never meet or talked to Mr. Mann when they purchased the Cumberland warranty. They stated they meet and talked to Mr. Breur. All the documents list Mr. Breur and Mr. Kornfeld as the brokers of record. They also list Mr. Derby as the compliance officer. Hence, the first element was not established. Mr. Mann never made any statements directly to the Claimants when they purchased this product. As such, a misrepresentation claim could not exist as to Mr. Mann.

Moreover, as all of this information as to Cumberland (as it relates to the percent of coverage) was public information, Claimant's reliance was not reasonable. Therefore, a claim for misrepresentation under the law does clearly not exist. At the very least Mr. Mann should not have been found liable for misrepresentation.

It is also improper under the law to impute misrepresentation onto another party if they did not make the statement and they did not profit from the actions. If Mr. Breur did make false statements then only he and Mr. Kornfeld should be liable as only they

received the commissions along with Pacvest, Inc. Pacvest is owned by ACI. Mr. Mann owns slightly less than 50% of ACI. As such, it was improper and unfounded in law to impute misrepresentation onto Mr. Mann.

"Where plaintiff paid money to one defendant for purpose of purchasing interest in corporation which subsequently went bankrupt but all representations inducing plaintiff to part with money were made by defendant to whom it was paid, plaintiff could not recover on basis of fraud from defendant who made no representations and received no money." Goodman v. Strassburg, 139 So.2d 163 (1963).

As to the suitability claim, it is unfounded as all the information regarding Cumberland and the reinsurance was public information. With or without a 275% restriction most reinsurance agreements become substantially modified as a result of a bankruptcy. It is common knowledge that if Cumberland went bankrupt the reinsurance would not likely pay the full amount and language to this effect could have likely been apart of the reinsurance agreement.

The claimants were substantially well off enough financially that they could afford the risk. The determining factor is if they could afford the risk and were they sophisticated enough to understand financial markets. Based upon their financials and education and business ownership they were suitable.

As to the breach of fiduciary duty and failure to supervise claim, Mr. Mann was not their broker so he could not be held liable under a fiduciary duty theory and Mr. Mann was not the compliance officer, Mr. Derby was, and also under law he could not be held liable under a failure to supervise. Also, Mr. Kornfeld filed a failure to supervise claim against Mr. Mann and Pacvest as a counter claim in the NASD Arbitration instituted against him after he was dismissed from Pacvest and the NASD ruled against Mr. Kornfeld and in Pacvest's favor as to failure to supervise Mr. Breur. Accordingly, this issue is likely moot as to the legal theory of Res Judicata and Collateral Estoppel.

As such, for the foregoing reasons, Robert K. Mann respectfully requests that this panel reverse the finding of joint and several liability as to Mr. Mann on all four counts.

Conclusion

Because the arbitration award in this case exceeded the authority of the arbitrators and was entered in manifest disregard of the law, the plaintiff respectfully requests this court to vacate that award as to Mr. Mann.

DATED: 10/16/06

Respectfully Submitted,

Robert K. Mann, Pro Se
3260 Delray Bay Drove
Apt 508
Delray Beach, FL 33483-8600
561-266-8771

## CERTIFICATE OF SERVICE

I, Robert K. Mann, do certify that I served the Motion to Reconsider arbitration award received on September 19, 2006 onto opposing counsel Blum & Silver located at:

12540 W. Atlantic Blvd.
Coral Springs, FL 33071

Robert K. Mann
Pro Se

Dated: 10/16/06

*EXHIBIT A*

# DECLARATION OF DAVID CONSTANTINO

I, David Constantino, declare as follows:

1. I was the attorney for the Respondents Robert K. Mann and Pacvest Associates, Inc. in the arbitration NASD Number 05-04437.
2. I am an attorney licensed in Massachusetts and Florida.
3. As of the date of this motion, the transcript of the subject arbitration has not been prepared. I believe that a review of the transcript would establish:
   (a) that Mr. Goldstein stated he was a sophisticated investor on direct examination by his attorney and then denied he was a sophisticated investor on cross examination.
   (b) Claimants counsel submitted evidence of prior bad acts of Lloyd Breur shown to be unrelated to the Goldstein's accounts over my objection.
   (c) Lloyd Breur did not attend the hearing or testify in any way.
   (d) Mr. Mann was not the broker of record for the Claimants
   (e) Lloyd Breur and Barry Kornfeld were the brokers for the Claimants.
   (f) The Claimants were sophisticated investors.
   (g) The Claimants were financially well off enough to be suitable for the investment product in question.
   (h) The Claimant Mr. Goldstein owned and operated a successful pharmaceutical company for which he sold recently and Mrs. Goldstein has a B.S. in accounting from Syracuse University.
   (i) Claimants maintained other financial advisors and investment accounts.
   (j) The Claimants never met or spoke to Mr. Mann when they purchased the product.

Signed and sworn to under the pains and penalties of perjury.

[signature] 10-17-06

David Constantino

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Names of the Claimants
Steven and Janet Goldstein

Case Number: 05-04437

Names of the Respondents
Pacvest Associates, Inc.
Barry Michael Kornfeld
Robert K. Mann

Hearing Site: Boca Raton, Florida

Nature of the Dispute: Customer vs. Member and Associated Person.

## REPRESENTATION OF PARTIES

For Steven and Janet Goldstein, hereinafter collectively referred to as "Claimants": Randall Place, Esq., Blum & Silver, LLP, Coral Springs, Florida.

For Pacvest Associates, Inc., hereinafter referred to as "Respondent Pacvest": David Constantino, Esq., The Law Office of David Constantino, Worcester, Massachusetts.

Barry Kornfeld, hereinafter referred to as "Respondent Kornfeld", did not appear.

For Robert K. Mann, hereinafter referred to as "Respondent Mann": Lloyd R. Schwed, Esq., Kubicki Draper, P.A., West Palm Beach, Florida until his withdrawal as counsel on or about January 31, 2006. Thereafter, David Constantino, Esq., The Law Office of David Constantino, Worcester, Massachusetts, appeared.

## CASE INFORMATION

Statement of Claim filed on or about: August 15, 2005.
Claimants signed the Uniform Submission Agreements: August 5, 2005.
Motion to Dismiss jointly filed by Respondents Pacvest and Mann on or about: November 20, 2005.
Respondent Mann signed the Uniform Submission Agreement: November 22, 2005.
Response to Motion to Dismiss filed by Claimants on or about: December 12, 2005.
Respondent Pacvest signed the Uniform Submission Agreement: January 5, 2006.
Respondent Kornfeld did not file a Statement of Answer or executed Uniform Submission Agreement.

## CASE SUMMARY

Claimant asserted the following causes of action: 1) respondeat superior; 2) breach of contract; 3) breach of fiduciary duty; 4) unsuitability; 5) misrepresentations and omission

of material facts; 6) negligent supervision, retention and hiring of employees; and, 7) violation of industry rules, including but not limited to NYSE's "know your customer" standard (Rule 405) and NASD's customer suitability standard (Rule 2130). The causes of action relate to Claimants' investments in Respondents' MarketShield Mutual Fund Program.

Unless specifically admitted in their Statement of Answer/ Motion to Dismiss, Respondents Pacvest and Mann denied the allegations in the Statement of Claim and asserted various defenses.

## RELIEF REQUESTED

Claimants requested: 1) compensatory damages of approximately $100,000.00; 2) interest at the legal rate from the date of purchase or reasonable market return; 3) rescission; 4) an unspecified amount of punitive damages; 5) costs of this proceeding; and, 6) such other relief as is deemed just and proper by the undersigned arbitrators ("the Panel").

Respondents Pacvest and Mann requested a dismissal of Claimants' Statement of Claim in its entirety.

## OTHER ISSUES CONSIDERED AND DECIDED

On or about July 29, 2003, Respondent Kornfeld filed for protection pursuant to Chapter 7 of the United States Bankruptcy Code. As such, all proceedings with respect to Respondent Kornfeld were stayed and the Panel made no determination with respect to this party.

Claimants named Advisors Capital Investments, Inc. ("ACI") as a respondent in the Statement of Claim. ACI is not a member of NASD and is not required to submit to arbitration before NASD Dispute Resolution. On or about November 20, 2005, Respondent ACI declined to submit to arbitration. Accordingly, the Panel made no determination with respect to ACI.

On or about December 20, 2005, Respondents Pacvest and Mann filed a notice with NASD Dispute Resolution which designated their Motion to Dismiss as their formal Answer to the Statement of Claim.

On or about January 31, 2006, the Panel issued an order which denied Respondents Pacvest and Mann's Motion to Dismiss.

The parties have agreed that the Award in this matter may be executed in counterpart copies.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

Respondents Pacvest and Mann are jointly and severally liable on the claims of breach of fiduciary duty, unsuitability, misrepresentation and failure to supervise and shall pay to Claimants compensatory damages in the amount of $73,336.30, pre-judgment interest specifically excluded.

Any and all claims for relief not specifically addressed herein, including Claimants' requests for punitive damages, are denied.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

| | |
|---|---|
| Initial claim filing fee | = $ 225.00 |

**Member Fees**
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute. In this matter, the member firm Pacvest Associates, Inc. is a party.

| | |
|---|---|
| Member surcharge | = $ 1,100.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $ 1,700.00 |
| Total Member Fees | = $ 3,550.00 |

**Adjournment Fees**
Adjournments granted during these proceedings for which fees were assessed:

There were no adjournments requested during these proceedings for which fees were assessed.

**Three-Day Cancellation Fees**
Fees apply when a hearing on the merits is postponed or settled within three business days before the start of a scheduled hearing session:

No three-day cancellation fees were incurred in this matter.

**Injunctive Relief Fees**

Injunctive relief fees are assessed to each member or associated person who files for a temporary injunction in court. Parties in these cases are also assessed arbitrator travel expenses and costs when an arbitrator is required to travel outside his or her hearing location and additional arbitrator honoraria for the hearing for permanent injunction. These fees, except the injunctive relief surcharge, are assessed equally against each party unless otherwise directed by the Panel.

No injunctive relief fees were incurred in this matter.

**Forum Fees and Assessments**

The Panel has assessed forum fees for each session conducted or each decision rendered on a discovery-related motion on the papers. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Two (2) pre-hearing sessions with a single arbitrator @ $450.00/session | | | =$ 900.00 |
| Pre-hearing conferences: | June 22, 2006 | 1 session | |
| | July 21, 2006 | 1 session | |
| One (1) Pre-hearing session with the Panel @ $750.00/ session | | | =$ 750.00 |
| Pre-hearing conference: | January 31, 2006 | 1 session | |
| Four (4) Hearing sessions @ $750.00/ session | | | = $3,000.00 |
| Hearing Dates: | September 11, 2006 | 2 sessions | |
| | September 12, 2006 | 2 sessions | |
| Total Forum Fees | | | =$4,650.00 |

The Panel has assessed $2,325.00 of the forum fees jointly and severally to Claimants. The Panel has assessed $2,325.00 of the forum fees jointly and severally to Respondents Pacvest and Mann.

**Administrative Costs**

Administrative costs are expenses incurred due to a request by a party for special services beyond the normal administrative services. These include, but are not limited to: additional copies of arbitrator awards; copies of audio transcripts; retrieval of documents from archives; interpreters; and, security.

There were no administrative costs incurred during these proceedings.

**Fee Summary**

Claimants are jointly and severally liable for:

| | |
|---|---|
| Initial Filing Fee | = $ 225.00 |
| Forum Fees | = $ 2,325.00 |
| Total Fees | = $ 2,550.00 |
| Less payments | = $ 975.00 |
| Balance Due NASD Dispute Resolution | = $ 1,575.00 |

Respondent Pacvest is solely liable for:

| | |
|---|---|
| Member Fees | = $ 3,550.00 |
| Total Fees | = $ 3,550.00 |
| Less payments | = $ 3,550.00 |
| Balance Due NASD Dispute Resolution | = $ 0.00 |

Respondents Pacvest and Mann are jointly and severally liable for:

| | |
|---|---|
| Forum Fees | = $ 2,325.00 |
| Total Fees | = $ 2,325.00 |
| Less payments | = $ 0.00 |
| Balance Due NASD Dispute Resolution | = $ 2,325.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

**ARBITRATION PANEL**

| | | |
|---|---|---|
| Ilisa J. Smukler, Esq. | - | Public Arbitrator, Presiding Chairperson |
| Iris Marilyn Bass, Esq. | - | Public Arbitrator |
| James G. Gertz | - | Non-Public Arbitrator |

**Concurring Arbitrators' Signatures**

/s/ 09/15/2006

Ilisa J. Smukler, Esq.
Public Arbitrator, Presiding Chairperson
Signature Date

/s/ 09/14/2006

Iris Marilyn Bass, Esq.
Public Arbitrator
Signature Date

/s/
James G. Gertz
Non-Public Arbitrator

09/14/06
Signature Date

September 15, 2006
Date of Service (For NASD Dispute Resolution office use only)

**Fee Summary**

Claimants are jointly and severally liable for:

| | |
|---|---|
| Initial Filing Fee | = $ 225.00 |
| Forum Fees | = $ 2,325.00 |
| Total Fees | = $ 2,550.00 |
| Less payments | = $ 975.00 |
| Balance Due NASD Dispute Resolution | = $ 1,575.00 |

Respondent Pacvest is solely liable for:

| | |
|---|---|
| Member Fees | = $ 3,550.00 |
| Total Fees | = $ 3,550.00 |
| Less payments | = $ 3,550.00 |
| Balance Due NASD Dispute Resolution | = $ 0.00 |

Respondents Pacvest and Mann are jointly and severally liable for:

| | |
|---|---|
| Forum Fees | = $ 2,325.00 |
| Total Fees | = $ 2,325.00 |
| Less payments | = $ 0.00 |
| Balance Due NASD Dispute Resolution | = $ 2,325.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

**ARBITRATION PANEL**

| | | |
|---|---|---|
| Ilisa J. Smukler, Esq. | - | Public Arbitrator, Presiding Chairperson |
| Iris Marilyn Bass, Esq. | - | Public Arbitrator |
| James G. Gertz | - | Non-Public Arbitrator |

**Concurring Arbitrators' Signatures**

Ilisa J. Smukler, Esq.
Public Arbitrator, Presiding Chairperson

9/15/06
Signature Date

Iris Marilyn Bass, Esq.
Public Arbitrator

Signature Date

**Fee Summary**

Claimants are jointly and severally liable for:

| | |
|---|---|
| Initial Filing Fee | = $ 225.00 |
| Forum Fees | = $ 2,325.00 |
| Total Fees | = $ 2,550.00 |
| Less payments | = $ 975.00 |
| Balance Due NASD Dispute Resolution | = $ 1,575.00 |

Respondent Pacvest is solely liable for:

| | |
|---|---|
| Member Fees | = $ 3,550.00 |
| Total Fees | = $ 3,550.00 |
| Less payments | = $ 3,550.00 |
| Balance Due NASD Dispute Resolution | = $ 0.00 |

Respondents Pacvest and Mann are jointly and severally liable for:

| | |
|---|---|
| Forum Fees | = $ 2,325.00 |
| Total Fees | = $ 2,325.00 |
| Less payments | = $ 0.00 |
| Balance Due NASD Dispute Resolution | = $ 2,325.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

**ARBITRATION PANEL**

| | | |
|---|---|---|
| Ilisa J. Smukler, Esq. | - | Public Arbitrator, Presiding Chairperson |
| Iris Marilyn Bass, Esq. | - | Public Arbitrator |
| James G. Gertz | - | Non-Public Arbitrator |

**Concurring Arbitrators' Signatures**

Ilisa J. Smukler, Esq.
Public Arbitrator, Presiding Chairperson

Signature Date

Iris Marilyn Bass, Esq.
Public Arbitrator

9/14/06
Signature Date

NASD Dispute Resolution
Arbitration No. 05-04437
Award Page 6

James G. Gertz
Non-Public Arbitrator

9/14/06
Signature Date

Date of Service (For NASD Dispute Resolution office use only)

**NASD Dispute Resolution**

# UNIFORM SUBMISSION AGREEMENT

In the Matter of Arbitration Between:

**Name of Claimant(s):**
STEVEN AND JANET GOLDSTEIN,

**Name of Respondent(s):**
PACVEST ASSOCIATES, INC.,

ADVISORS CAPITAL INVESTMENTS, INC.,

BARRY KORNFELD,

ROBERT MANN,

______________________________________/

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations and/or NASD Code of Arbitration Procedure of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby

voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission Agreement.

**Signature** ____________________ **Date** 8/5/05
Steven Goldstein

**Signature** ____________________ **Date** 8/5/05
Janet Goldstein

**BEFORE NASD DISPUTE RESOLUTION**

**In the Matter of the Arbitration Between:** **CASE NO.**

STEVEN AND JANET GOLDSTEIN,

**CLAIMANTS**

vs.

PACVEST ASSOCIATES, INC.,

ADVISORS CAPITAL INVESTMENTS, INC.,

BARRY KORNFELD,

ROBERT MANN,

**RESPONDENTS.**

_______________________________________/

## STATEMENT OF CLAIM

Pursuant to the Rules of NASD Dispute Resolution, Steven and Janet Goldstein[1] (at times also referred to as "Claimants") submit this claim against Pacvest Associates, Inc. **(CRD #29583)** (at times also referred to as "Pacvest" or "Respondent"), Advisors Capital Investments, Inc **(CRD #104811)** (at times also referred to as "Advisors Capital" or "Respondent") and their employee/agent/financial advisors Barry Kornfeld **(CRD #1490377)** (at times also referred to as "Kornfeld," "the financial advisor" or "Respondent") and Robert Mann **(CRD #318870)** (at times also referred to as "Mann," "the financial advisor," "the control person" or "Respondent"). Respondents engaged in

[1] Claimants are the beneficial owners and/or have authority to bring this action on behalf of all accounts held with Respondent. Claimants' standing to bring these claims includes, but is not limited to, all individual, joint, retirement, business or trust accounts with Respondent that were opened with new account agreements executed by any or all Claimants named above including, but not limited to account numbers ACH-009571, AIR-002801 and ACH-517020.

misconduct as identified herein.

## The Parties

At all times material hereto, Claimants were residents of the State of Florida when they held investment accounts with Pacvest and/or Advisors Capital. Certain purchases and sales of securities were made in those accounts by Respondents as fiduciaries and agents of Claimants.

Upon information and belief, Pacvest: (1) is a corporation qualified to do business and is doing business in Florida; (2) is a securities broker/dealer registered with the Securities & Exchange Commission and the Florida Department of Banking and Finance, Division of Securities; and (3) maintains a membership in the New York Stock Exchange and the NASD. At all times relevant hereto, Claimant maintained account(s) with Pacvest and/or Advisors Capital, which are firms that conduct securities transactions within the State of Florida.

Upon information and belief, Advisors Capital: (1) is a corporation qualified to do business and is doing business in Florida; (2) is an investment advisory firm registered with the Securities & Exchange Commission and the Florida Department of Banking and Finance, Division of Securities; and (3) maintains an NASD membership. At all times relevant hereto, Claimant maintained account(s) with Pacvest and/or Advisors Capital, which are firms that conduct securities transactions within the State of Florida.

At times relevant hereto, the financial advisors were registered NASD members, employed by and under the control of Pacvest and Advisors Capital. As such, Pacvest and Advisors Capital are liable for the conduct of their employees by virtue of the doctrines of *respondeat superior* and vicarious liability.

Respondents Kornfeld and Mann have held their securities licenses with Respondent PacVest Associates, Inc. since 1999[2] and 1993, respectively. Mann has been licensed as a registered investment adviser with Respondent Advisors Capital since 1986.

Upon information and belief, Robert Mann was, at all times relevant to the misconduct described herein, a controlling shareholder and the President of PacVest and Advisors Capital[3].

As a control person of Pacvest and Advisors Capital, Mann is liable for Respondents' misconduct. Moreover, as an officer and control person of Pacvest and Advisors Capital, Mann is liable for the conduct of Barry Kornfeld by virtue of the doctrines of *respondeat superior* and vicarious liability.

**Jurisdiction, Situs, and Choice of Law**

This case is eligible for submission to this arbitration forum by virtue of the Customer Agreements and Rule 10100, et seq., of the NASD Code of Arbitration Procedure.

The situs is appropriate in Boca Raton, Florida (the Southeast division of the NASD) which is the hearing location nearest to where Claimants resided (a) when certain wrongs perpetrated herein occurred, (b) when certain trading authorizations were given, (c) when the causes of action accrued, and (d) where some of the relevant witnesses reside.

The proceeding should be governed by the applicable industry rules and regulations (NYSE, NASD, etc.) as interpreted and implemented by Florida statutory and

---

[2] Per NASD CRD records, Kornfeld was "permitted to resign" from Pacvest in or about June 2001 as a result of an internal investigation into misconduct including forgery of insurance certificates.

[3] Mr. Mann's status as an officer and controlling shareholder of PacVest and Advisors Capital is prominently mentioned on Advisors Capital's website, www.advisorscapital.com/ourteam/index.html.

common law, and because of the strong public policy the Florida legislature has expressed in protecting its residents from securities fraud.

## Statement of Facts[4]

Claimants Steven and Janet Goldstein invested approximately $113,616.48 with Respondents. Respondents represented that they had purchased an insurance policy which guaranteed the principal their clients invested. Respondents failed in its duties to Claimants and as a result, Claimants have lost a significant amount of their principal.

Claimants demand rescission of the investments that are the subject of this claim, or in the alternative, an award granting Claimants damages for the losses suffered by Claimants as a result of their "investment" in Respondents' "guaranteed" program[5].

Respondents recommended that Claimants invest in their MarketShield Mutual Fund Program. Respondents represented that this program was fully guaranteed and expressly stated that Claimants could not lose their principal by investing in this program. Claimants are unsophisticated investors and believed Respondents' assurances and promises. Based on Respondents' representations, promises and assurances, Claimants invested approximately $114,000.00 with Respondents.

Respondents have repeatedly represented, both orally and in writing, that Claimants' investment was safe and protected from loss. Clearly, these representations were false and misleading, as the investments sold to Claimants by Respondents were not

---

[4] Prior to filing this claim, Claimants requested, among other things, copies of all account statements for Claimants' accounts. However, Respondent refused to produce those documents even though the documents requested are all discoverable under NASD Notice to Members 99-90. Therefore, some of the numbers and information that is being presented in this claim may not be exact and are approximated and Claimants reserve the right to amend this Claim if needed once all of the documents and information are obtained and evaluated.

[5] See Exhibit 1: November 9, 2000 letter from Respondents.

only unsafe and risky; the investments have lost a substantial percentage since Claimants purchased them.

Investor Capital's Form ADV, Uniform Application for Investment Adviser Registration, clearly states that "Clients who invest in certain mutual funds may obtain from Registrant [Investors Capital] a warranty that Registrant's risk management strategy will not result in a loss to the client's accounts." Claimants did obtain this warranty, and provided valuable consideration to Respondents (in the form of considerable fees) for this benefit. Respondents failed to honor the guarantee of Claimants' accounts, represented to Claimants by Respondents. Respondents breached the contract they entered into with Claimants and are liable for the losses Claimants suffered as a result[6].

Claimants signed a valid and enforceable contract with Respondents which provided for the return of a minimum of 100% of the funds Claimants entrusted to Respondents after a five year period of time. Respondents failed to honor this contract. The facts, and the law, are clear as to Respondents' liability to Claimants for their losses. As a direct and proximate result of Respondents' misconduct, Claimants have suffered losses of approximately $100,000.00.

Respondents failed to perform the necessary due diligence to ensure the safety of this market guarantee. Even when faced with red flags regarding the impropriety of this insurance scam, Respondents' only reaction was to boost Claimants' charges[7].

---

[6] Although it appears that Respondents did purchase a policy through Cumberland Insurance, Cumberland is now in receivership. However, Respondents are not the victims here and are responsible for the losses Claimants have suffered.

[7] See Exhibit 2: Letter from Mann giving notice of an increase in the advisory fee Respondents charged Claimants.

## Respondents Breached the Fiduciary Duty Owed to Claimants

The elements of a cause of action for breach of fiduciary duty under Florida law are: (1) the existence of a fiduciary duty owed to Claimants by Respondents; (2) the breach of that duty by Respondents; (3) proximately causing (4) damages to Claimant. Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002).

In the instant case, Respondents' representations, assurances and promises, made by both the financial advisor and the firm through their advertising and marketing campaigns, created the consideration precedent to Claimants' agreement to entrust their savings to Respondents. Thus, a fiduciary relationship was created at the time Claimants opened investment accounts with Respondents and survived for the life of the relationship.

Respondents' recommendation and implementation of an unsuitable and risky investment strategy constitutes a breach of that duty to Claimants. Clearly, the losses suffered by Claimants were a direct and proximate result of following Respondent's negligent investment advice. Lastly, the losses suffered by Claimants are indisputable and are evidenced by a full and complete accounting of the activity in Claimants' accounts. In conclusion, Claimants' claim for damages sustained as a result of Respondents' breach of their fiduciary duty to Claimants must be sustained as both the facts, and the law, support it.

## Conclusion

Respondents sold Claimants unsuitable investments. Respondents misrepresented the safety of their investment strategy. Respondents assured Claimants that their money was invested in a program that was "insured" and "guaranteed," although it clearly was not. Claimants purchased, and held, the investments in question as a direct result of

Respondents' misrepresentations and omissions of material facts. Clearly, Respondents are liable to Claimants for the losses Claimants have suffered as a result.

Pacvest and Advisors Capital were negligent in their supervision, retention and hiring of their employees. Due to Respondents' misconduct, Claimants have suffered losses of approximately $100,000.00.

**Violations of Law**

Respondents have violated industry rules, including but not limited to the NYSE's "Know your customer" standard (Rule 405) and the NASD's customer suitability standard (Rule 2310). Respondents breached the contract that was entered into between Claimants and Respondents. Respondents and the financial advisors also breached the fiduciary duty that a securities firm and its employees/agents owe to their clients.

Moreover, the account(s) at issue were handled negligently. Pacvest, Advisors Capital and Robert Mann, as the control person of both firms, were negligent in their hiring, retention and supervision of their employees.

**DAMAGES REQUESTED**

For the misconduct identified herein and which the evidence and testimony will support at the Final Hearings, Claimants demand an award against Respondents, jointly and severally, for:

(A) compensatory damages of approximately $100,000.00;

(B) interest at the legal rate from the date of purchase or reasonable market return;

(C) rescission;

(D) punitive damages;

(E) the costs of this proceeding; and for such other relief as is just and proper.

Respectfully submitted by:

BLUM & SILVER, LLP
Attorneys for Claimants
12540 W. Atlantic Blvd.
Coral Springs, FL 33071
Telephone: (954) 255-8181
Facsimile: (954) 255-8175

By:________________________ Date: 8/15/05

DARREN C. BLUM
Fla. Bar No. 087173
SCOTT L. SILVER
Fla. Bar No. 095631

# EXHIBIT 1

**Blum & Silver, LLP**
12540 W. Atlantic Blvd.
Coral Springs, FL 33071
Phone: (954) 255-8181
Fax: (954) 255-8175

KB
FINANCIAL PARTNERS

*A Registered Investment Advisor*

*Barry Kornfeld*
*President*

*Lloyd Breuer*
*Vice President*

*800 Corporate Drive*
*Suite 220*
*Fort Lauderdale*
*Florida 33334-3618*

*954-491-5515*
*800-457-3650*
*Fax: 954-491-5045*
*e-mail: kbfp@aol.com*

November 9, 2000

Mr. Steven C. Goldstein
11710 NW 29th Str.
Sunrise, FL 33323-1606

**RE: National Financial Services Corporation–**
**Warranted Account**
**Account #ACH-517020**

Dear Steven:

Congratulations, your account is now warranted for $ 104,234.64, locking in your profit over a new, five-year term. In essence, we cancelled your account and created a new account. The date of this upgrade is 7-17-00. You received credit for the unused portion of your previous advisory fee and your account was debited for the difference of $ 1,845.06.

Your new insurance certificate reflecting your new warranted amount and effective date is enclosed.

As always, we appreciate the trust and confidence that you have placed in us. The ability to lock in your gains is a value-added benefit for you.

Sincerely,

Lloyd Breuer

LB/ik

CC: Advisor's Capital

# EXHIBIT 2

**Blum & Silver, LLP**
12540 W. Atlantic Blvd.
Coral Springs, FL 33071
Phone: (954) 255-8181
Fax: (954) 255-8175

# Important Notice Concerning Your Warranted Managed Account !

ADVISOR'S CAPITAL Investments, Inc.

Last year Advisor's Capital Investments, Inc. experienced a loss of $200,497. The major contributing factor was that ACI pays 1% of your insured amount to Cumberland Casualty & Surety Company. You pay ACI on the current value of your account. As a key executive and largest shareholder, I sacrificed over 90% of my salary last year and did not take any commission compensation. I sold my investments and borrowed against my profit sharing assets to cover the deficiency and paid the insurance bill. In 2002, our fee revenue will be reduced on individual accounts from 20 to 50%, but the Cumberland bill will stay the same. I no longer have any resources to draw on to make up the difference.

Advisor's Capital Investments, Inc. had focused on generating other profitable business to help cover this insurance deficit. Our efforts have made a contribution but are not sufficient.

If Advisor's Capital Investments, Inc. fails, then the management will not continue and the insurer will not pay.

The reason for our problem is that you pay us on the asset value and we pay the insurance on the insured value.

Our proposed solution is to ask you to execute a contract amendment, which will increase the advisory fee to 3% of assets for 2002 through the warranty maturity date. If your fee is withdrawn from your account, our insurer will cover the entire 3% fee so your warranty value will not be reduced. I believe this adjustment will enable us to overcome the problem.

Originally, the warranty account cost was supposed to have been 3% per year. Our marketers reduced the fee to increase their business. No one contemplated the severity of the stock market decline, or the length of it.

Enclosed, please find our agreement for your account(s). You must realize that if we could absorb this problem, we would not ask you to work with us on this issue. We cannot afford to miss a payment to our insurers for even one day, because they look for excuses to cancel our coverage.

You may call me at 1-800-397-0722 to ask questions. Since this letter is going out to all clients who are paying less than 3% per year it is likely that our phones will be very busy for a period.

I have enclosed our ADV, which has a year-end balance sheet so that you can clearly understand our position. $200,000 of our liabilities is for legal bills. The rest of our payables are current. The attorneys have been paid at an earlier date and have not been hostile to us in collecting the balance.

Our business is becoming stronger. This change of fee to 3% will not cover the insurance payment deficiency in its entirety, but if our clients accept this proposal, I am confident our company will be able to make up the differential.

Sincerely,

Robert K. Mann

Robert K. Mann
President

328 South Military Trail
Deerfield Beach, FL 33442
954-420-0780
Fax 954-725-4579

17 Tripp Road
Woodstock, CT 06281
800-397-0722
Fax 860-928-1831

Securities offered through PacVest Associates, Inc. Member NASD/SIPC

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

06-80983

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
Robert K. Mann

**DEFENDANTS** CIV-MIDDLEBROOKS
Steven & Janet Goldstein

(b) County of Residence of First Listed Plaintiff Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

MAGISTRATE JUDGE JOHNSON

(c) Attorney's (Firm Name, Address, and Telephone Number)
Robert K. Mann, Pro Se 561-266-8771
3260 Delray Bay Dr., Apt. 508
Delray Beach, FL 33483

Attorneys (If Known)
Blum & Silver, LLP
12540 W. Atlantic Blvd.
Coral Springs, FL 33071

(d) Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☒ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

WPB 06-80983-CV-MIDDLEBROOKS/JOHNSON

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

FILED BY ... D.C. OCT 19 2006 CLARENCE MADDOX CLERK U.S. DIST. CT. S.D. OF FLA. - W.P.B.

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed- (see VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):
a) Re-filed Case ☐ YES ☒ NO b) Related Cases ☐ YES ☒ NO
JUDGE DOCKET NUMBER

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
Motion to vacate arbitration award pursuant to 9 U.S.C. § 10
LENGTH OF TRIAL via ____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**
SIGNATURE OF ATTORNEY OF RECORD [signature]
Robert K. Mann, Pro Se
DATE 10/16/06

**FOR OFFICE USE ONLY**
AMOUNT $350.00 RECEIPT # 948382 IFP
10/19/06